Filed 8/16/24  P. v. Avila CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>GABRIEL LOUIS AVILA,<br><br>    Defendant and Appellant. | E078899<br><br>(Super.Ct.No. RIF089270)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the opinion filed herein on July 25, 2024, be modified as follows:

1.  On page 3, footnote 2, line 3 after the words "record of conviction" insert the citation "(see *People v. Lewis* (2021) 11 Cal.5th 952, 972, citing *People v. Woodell* (1998) 17 Cal.4th 448, 454-455)" so that it now reads as follows:

>         The People have requested that we take judicial notice of the unpublished opinion of this court from the direct appeal of both defendants, *People v. Acosta*, *et al.*, *supra*, E032178.  However, that opinion is part of the record of conviction (see *People v. Lewis* (2021) 11 Ca1.5th 952, 972, citing *People v. Woodell* (1998) 17 Cal.4th 448, 454-455) on which a prima facie showing on a petition for resentencing was determined, and both parties have referred to the opinion in setting out the factual background of the case.  We therefore deny the request as unnecessary.

2.  On page 17,  seven lines down from the top of the page and before the first full paragraph add the following sentence:

Defendant's invocation of *United States v. Cronic*, *supra*, 466 U.S. 648, is unavailing where defendant's counsel was not shown to be inexperienced or unprepared and where there was no nexus between counsel's representation of defendant and the finding that defendant was ineligible.

There is no change in the judgment.

Appellant's petition for rehearing is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
J.

CODRINGTON
J.

Filed 7/25/24  P. v. Avila CA4/2 (unmodified opinion)
## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

THE PEOPLE,

     Plaintiff and Respondent,

v.

GABRIEL LOUIS AVILA,

     Defendant and Appellant.

E078899

(Super.Ct.No. RIF089270)

OPINION

APPEAL from the Superior Court of Riverside County.  Ronald L. Taylor, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. 78899 VI, § 6 of the Cal. Const.)  Affirmed.

Mary K. McComb and Galit Lipa, State Public Defenders, and Carrie C. Hall, Deputy State Public Defender, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Lynne G. McGinnis and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Gabriel Louis Avila filed an initial petition for resentencing in 2020, shortly after the enactment of former Penal Code[1] section 1170.95, 20 years after he (along with a codefendant) was convicted by jury of second degree murder in the gang-related killing of Armando Salcido and was sentenced to a term of 40 years to life. In that proceeding, the parties agreed to vacate the murder conviction and enter into a new negotiated disposition by which defendant entered a plea of guilty to voluntary manslaughter, along with enhancements for a gang allegation (§ 186.22, subd. (b)), personal use of a firearm (§ 12022.5, subd. (a)), and to making criminal threats (§ 422) to the same victim.

Following the enactment of Senate Bill No. 775 (2021-2022 Reg. Sess.), which added manslaughter to the list of offenses for which resentencing could be sought, defendant filed a second petition pursuant to section 1172.6 (formerly 1170.95). The trial court denied that petition at the prima facie stage and defendant appealed.

On appeal, defendant makes a number of claims of error in the summary denial of his petition, arguing (1) the court's finding he was ineligible as a matter of law was erroneous; (2) the court erred in allowing defense counsel to concede defendant was ineligible; (3) the court erred in conducting the hearing on the prima facie showing while defendant was absent from the courtroom; and (4) the trial court failed to give a proper statement of reasons for the denial of the petition. We affirm.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

BACKGROUND

We recite the facts from our unpublished opinion in defendant's direct appeal, *People v. Acosta et al.*, filed December 10, 2003, in case No. E032178,[2] supplemented with information regarding the postjudgment proceedings:

"The victim's girlfriend testified that the victim had been with her cousin, Danny, a member of the Vagabundo gang, on December 9, 1999, when the latter had been murdered. At Danny's funeral, Acosta held onto Danny's casket and would not let anyone pass by it. Avila was also present at the funeral.

"The girlfriend said that at the time Danny had been murdered, the victim had taken the former's gun and given it to her. A Vagabundo gang member had been told by the aunt of the victim's girlfriend that the gun was at the latter's house. The member had come to the house, wanting the gun. However, the victim's girlfriend had put it away until New Year's Eve.

"The victim's girlfriend testified that one week after Danny's murder, Avila had come to her house looking for the victim. Avila had led the victim to believe that the two were friends, and the victim had gone to Avila's house. During this visit, Avila had asked the victim what had happened when Danny died, but the victim had told him nothing.

---

[2]     The People have requested that we take judicial notice of the unpublished opinion of this court from the direct appeal of both defendants, *People v. Acosta*, *et al.*, *supra*, E032178. However, that opinion is part of the record of conviction, on which a prima facie showing on a petition for resentencing was determined, and both parties have referred to the opinion in setting out the factual background of the case. We therefore deny the request as unnecessary.

"The victim's girlfriend said that on New Year's Eve, she took Danny's gun out and she, the victim and the latter's friend, Rodriguez, fired it into the air to celebrate the coming of 2000, leaving no bullets in it. The victim's girlfriend later gave the victim the gun, but it had no bullets or magazine in it and its bottom was missing. The victim placed it in his back pocket.

"At some point that evening, according to the victim's girlfriend, the victim and Rodriguez had burglarized the home of her  neighbor. They had brought the spoils of the crime to the girlfriend's house.

"The girlfriend testified that around 10:00 p.m., Acosta and Avila were told that the victim would be at her house after midnight.[3]

"According to the victim's girlfriend, around 2:30 a.m. the following morning, she, a woman who had dated Danny, and the victim, who appeared to her to be inebriated, went to the spot where Danny had been fatally shot to light candles and write on the sidewalk and walls as a tribute to the deceased. The victim had Danny's empty gun in his back pocket. Rodriguez was not with them. As they wrote on the sidewalk and walls, a vehicle drove back and forth by them. Alarmed, they left and hid at a nearby church, then walked to the victim's girlfriend's house. As they approached the house, they saw Acosta, Avila and a companion coming out of the victim's girlfriend's front gate. One of the three pointed a gun at them and fired twice. The woman who had dated Danny ran away. The victim ran into the street towards the men to find out what they

---

[3]     The victim split his time between his family's home and his girlfriend's.

4

were doing.  Brief words were exchanged between the victim and the men, then Acosta and one of the latter began hitting and kicking the former.  During this, Avila told the other two to kill the victim because he had left Danny, whom Avila referred to as his "homeboy," to die.  Avila told the victim's girlfriend that the victim would have to die because he had left Danny to die.  Acosta told the victim's girlfriend to leave.  When she refused, he put the handgun he had been holding behind his back to her forehead and told her to get out of there, that he could not hurt her,[4] and they had to do what they had to do.  The victim, who had Danny's empty gun in his hand, placed himself partially between Acosta and his girlfriend.  The victim yelled at Acosta to get away from his girlfriend.[5]  At some point, Rodriguez had appeared on the scene and was also hit by the victim's assailants.  Acosta took his gun away from the forehead of the victim's girlfriend and shot the victim in the head from a distance of six inches, and the victim immediately fell to the ground.  Despite this, Acosta continued to fire at the victim while the latter lay on the ground, then moved closer to the victim and fired two more shots.  When Acosta had begun shooting, Avila, the defendants' companion, and Rodriguez ran away.

---

**4**     A witness for Avila testified that she told a defense investigator that the victim's girlfriend had told her that one of the three assailants suggested that she be shot, but another said they could not out of respect for Danny.

**5**     The victim's girlfriend told the first police officer on the scene that after the victim pulled Danny's gun out of his pocket, he pointed it at one of the assailants to scare them into leaving her and her boyfriend alone.  One of the three (she did not know Acosta's name at the time) then pulled out a gun and shot the victim.  She had told this officer nothing about one of the assailants holding a gun to her forehead.

5

"The victim's girlfriend testified that later that day, a person she thought was a member of the Vagabundos told her if she "rat[ted]," she was dead. He told her to say that a member[6] of a gang, which was a rival of the Vagabundos, had killed her boyfriend. The victim's girlfriend had been told by girlfriends of members of the Vagabundo gang that if she testified at trial, she and her family were dead.

"The woman who had dated Danny corroborated at trial the testimony of the victim's girlfriend that a vehicle had passed by them while they were at Danny's murder site. She added that the male passenger of the vehicle had stared at them. She also corroborated the victim's girlfriend's testimony that Rodriguez had not been with them when they approached the victim's girlfriend's house and encountered the three assailants. She agreed with the girlfriend that one of the three shot as they came out of the latter's gate. The victim ran towards them, saying he was going to see who they were. He pulled Danny's gun out. When the victim met up with the three, they hit and kicked him. One asked the victim what he was going to do now. The victim's girlfriend argued with them.[7]

"The victim's mother testified that Danny's grandmother told her that a woman who was both cousin to the victim's girlfriend and to Avila, and who dated a Vagabundo,

---

**6**    This person was suspected by the Vagabundos to have murdered Danny.

**7**    This woman told one of the first officers at the scene that the victim approached the three men, they argued, then fought, and the victim was shot when one of the three pulled out a gun.

had called the defendants before the murder and told them that the victim was at his girlfriend's house and was planning to go to Danny's murder site.[8]

"A prosecution gang expert opined that Danny, Acosta and Avila were hard-core Vagabundos and that the victim's murder was done to benefit that gang." (*People v. Acosta et al.*, *supra*, E032178.)

On June 22, 2001, the Riverside County District Attorney's Office filed an amended information charging defendant and a codefendant with one count of murder (§ 187, subd. (a), count 1), with attendant gun use (§ 12022.53, subd. (d)) and gang (§ 186.22, subd. (b)(1)) enhancements and one count of assault (§ 245, count 2). On August 9, 2001, a jury convicted defendant of second degree murder and assault and found the enhancements true. The court sentenced defendant to prison for 25 years to life, plus 15 years to life for the firearm discharge enhancement. This court affirmed the judgment on appeal in an unpublished opinion. (*People v. Acosta et al.*, *supra*, E032178.)

On January 2, 2019, defendant, represented by counsel, filed a petition for resentencing on the murder conviction pursuant to section 1170.95. The trial court issued an order to show cause. While that matter was pending, the parties negotiated a settlement, resulting in a stipulated vacatur of the original conviction and sentence, accompanied by negotiated plea agreement on September 11, 2020. Pursuant to the agreement, defendant's second degree murder conviction and related enhancements were

---

[8]     Danny's grandmother testified for Avila, denying this.

7

vacated, and the original information was amended to strike those charges and to add a new charge of voluntary manslaughter (§ 192) with new enhancements alleging personal use of a firearm (§ 12022.5) and that the crime was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)). Defendant pled guilty to voluntary manslaughter and admitted the enhancements pursuant to the agreement. In accordance with the terms of the agreement, the court sentenced defendant to a total term of 24 years: 11 years for voluntary manslaughter, three years for the gun use, and 10 years for the gang enhancement.

On November 19, 2020, Defendant corresponded with the court requesting that the abstract of judgment be amended due an error in calculating his conduct credits. The court granted the request by calendaring a hearing on the motion. On January 11, 2021, the court received a letter from the Division of Adult Institutions Legal Processing Unit, explaining that the sentence imposed in September 2020 was unauthorized. On January 21, 2021, defendant's counsel filed supplemental briefing on his motion to amend the abstract. Although the hearing on defendant's request was continued multiple times, the court ordered defendant held in local custody and produced for all hearings.

On February 17, 2021, defendant's case was calendared for two issues: the Department of Corrections and Rehabilitation had determined that a portion of the sentence rendered in 2020 was unlawful, and defendant sought a clarification of his sentence credits. The parties negotiated a new plea agreement, which would resolve the unauthorized sentence problem and allow for a new credits calculation. Pursuant to that agreement defendant's guilty plea was withdrawn again, and replaced by a new plea

8

agreement that was identical to the earlier plea bargain, with the exception of adding a count of making criminal threats (§ 422) toward the same victim as the voluntary manslaughter conviction.

After defendant had entered his plea of guilty, the court requested that the People establish a factual basis for the plea, whereupon the prosecutor asked, "Sir, do you admit that you committed a violation of [section] 192(a), a felony, in that on or about January 1st of 2000, in the County of Riverside, State of California, you did willfully and unlawfully and with malice kill Armando Salcido?" Defendant responded, "Yeah."

Pursuant to the new plea, on February 17, 2021, the court reduced defendant's sentence further and imposed a term of 22 years and eight months. At the sentencing on the revised plea agreement (which corrected the issue that gave rise to the unlawful sentence), defendant read from a personal statement he wrote, apologizing to the victim's family for his participation in the incident that led to the death, adding, "For this reason, I have admitted guilt . . . . Since the day of my arrest, I have admitted my role in this matter." "[M]y admission of guilt is a personal judgment against myself and does not reflect the mind of any other person involved." "I stand alone in my guilt."

On November 23, 2021, after the enactment of Senate Bill No. 775, defendant filed a second petition for resentencing, this time seeking resentencing on his voluntary manslaughter conviction. On April 22, 2022, after counsel was appointed, the court denied the petition at the prima face stage. Defendant filed a notice of appeal on April 26, 2022.

9

Defendant raises a number of claims challenging the summary denial of his petition, including arguments that he was not ineligible as a matter of law, the trial court should not have allowed defense counsel to concede that defendant was ineligible as a matter of law, and that the hearing at which the petition was denied was improperly conducted without defendant being present. However, none of his claims has merit, especially where defendant, himself, in open court, admitted committing voluntary manslaughter with malice, at the time of his negotiated plea to manslaughter, and reaffirmed that admission in his statement in allocution at the initial resentencing. In addition to the fact defendant's plea to manslaughter was entered after the legislative changes to section 188 and 189, which insulates the conviction from the preamendment infirmities, this admission was properly considered by the court, rendering defendant ineligible for resentencing. We address these issues as well as the challenges posed by defendant.

A. *General Principles Relating to Resentencing Petitions Pursuant to Section 1172.6.*

Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015) amended sections 188 and 189 to "eliminate[] natural and probable consequences liability for murder as it applies to aiding and abetting, and [to] limit[] the scope of the felony-murder rule." (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) As significant here, the amended section 188 provides that, except as stated in the amended section 189 governing felony murder, "in order to be convicted of murder, a principal in a crime shall

10

act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).)

Pursuant to the amendment, the felony-murder rule now applies to a person if and only if either: "(1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life . . . ." (§ 189, subd. (e); *People v. Bratton* (2023) 95 Cal.App.5th 1100, 1112.)

Further, Senate Bill No. 1437 added section 1170.95, now renumbered section 1172.6, which creates a procedure for convicted murderers who could not be convicted under the law as amended to retroactively seek relief. (*Lewis*, *supra*, 11 Cal.5th at p. 957.) A subsequent amendment to former section 1170.95 extended relief to defendants convicted of attempted murder based on the natural and probable consequences doctrine or manslaughter. (Sen. Bill No. 775 (2021-2022 Reg. Sess.).) Finally, effective June 30, 2022, section 1170.95 was renumbered to section 1172.6, with no changes in text. (Stats. 2022, ch. 58, § 10.) We will refer to the statute as section 1172.6.

As a result of these statutory changes, a person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or

11

manslaughter, may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts. (§ 1172.6, subd. (a).)

Upon receipt of a resentencing petition, counsel shall be appointed upon petitioner's request. (§ 1172.6, subds. (b)(1)-(3).) The prosecutor must then file a response to the petition, and a reply may be filed by the petitioner. (§ 1172.6, subd. (c).) The trial court shall then "hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

At the prima facie hearing, the trial court may rely on the record of conviction. (*Lewis*, *supra*, 11 Cal.5th at pp. 970-971.) The record of conviction may include the change of plea form, abstract of judgment, and charging document. (*People v. Self* (2012) 204 Cal.App.4th 1054, 1059.) The record of conviction also includes the information, the transcripts for the change of plea and sentencing hearing, and the abstract of judgment. (*People v. Verdugo* (2020) 44 Cal.App.5th 320, 329-330, overruled on other grounds by *Lewis*, at pp. 962-963; see *People v. Abarca* (1991) 233 Cal.App.3d 1347, 1350.)

"The record of conviction will necessarily inform the trial court's prima facie inquiry under [former] section 1170.95, allowing the court to distinguish petitions with potential merit from those that are clearly meritless." (*Lewis*, *supra*, 11 Cal.5th at

p. 971.)  At the prima facie hearing, the defendant must show "he did not, in fact, act or harbor the mental state required" for a conviction under current law.  (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815.)

The court may deny the petition if the person is ineligible as a matter of law. (*People v. Werntz* (2023) 90 Cal.App.5th 1093, 1108, citing *People v. Drayton* (2020) 47 Cal.App.5th 965, 980-981, overruled on a different ground in *Lewis*, *supra*, 11 Cal.5th at p. 963.)  If the record, including the court's own documents, contains facts refuting the allegations made in the petition, then the court is justified in making a credibility determination adverse to the petitioner.  (*Lewis*, at p. 971, citing *Drayton*, *supra*, at p. 979 & *In re Serrano* (1995) 10 Cal.4th 447, 456.)

We independently review a trial court's determination of whether a petitioner has made a prima facie showing.  (*People v. Pickett* (2023) 93 Cal.App.5th 982, 988; *People v. Harden* (2022) 81 Cal.App.5th 45, 52.)

B.  *Analysis of Defendant's Eligibility In Light of These Principles*

Examining the record of conviction, we observe that in pleading guilty to manslaughter during the February 2021 resentencing proceeding, the defendant responded to certain questions in order to establish a factual basis for the plea.  He admitted he was guilty of voluntary manslaughter and acted with malice.  While malice is not an element of manslaughter, where the record reveals that the defendant admitted more than the elements of the offense charged, such additional admissions may preclude relief under section 1170.95.  (*People v. Rivera* (2021) 62 Cal.App.5th 217, 234-235, citing *People v. Verdugo* (2020) 44 Cal.App.5th 320, 330 [suggesting that relief would be

precluded as a matter of law if petitioner "admitted being the actual killer as part of a guilty plea"], overruled on a different point in *Lewis*, *supra*, 11 Cal.5th at pp. 961-962; *People v. Palacios* (1997) 56 Cal.App.4th 252, 257 [no contest plea admits all elements and "'all allegations and factors comprising the charge contained in the pleading'"].)

We obtained supplemental briefing from the parties on the issue of whether defendant's statements during the revised plea proceedings in February 2021 rendered defendant ineligible, where this issue had not been raised in briefing. The defendant's admissions were made as part of his guilty plea, and are part of the record of conviction, establishing that defendant acted with malice, whether he was the actual killer or not. Statements and stipulations made at a plea hearing are part of the record of conviction. (See *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1120; *People v. Romero* (2022) 80 Cal.App.5th 145, 152-153.) As such, a trial court may rule against defendant based on the stipulated factual basis, and doing so was not an error. (See *Lewis*, *supra*, 11 Cal.5th at p. 971 [a court may deny a petition at the prima facie stage based on the record of conviction].) In addition, we are not required to ignore this fact simply because the parties failed to mention it. Because defendant's admission establishes that, as a principal, he acted with malice aforethought, malice was not merely imputed to him based solely on his participation in a crime. (§ 188, subd. (a)(3).)

By admitting he acted with malice, the defendant established he was ineligible for relief as a matter of law. Although the trial court cited a different basis for the denial, it correctly denied the petition for resentencing. (*People v. Camacho* (2022) 14 Cal.5th 77,

14

123 ["we review the trial court's ruling, 'not the court's reasoning and, if the ruling was correct on any ground, we affirm'"].)

C. *Defendant's Other Assertions Do Not Change the Outcome*

Defendant raises several arguments that we address here, although they do not affect the outcome because any error is harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*).) As argued by the People below as well as on appeal, defendant pled guilty to manslaughter after the amendments to sections 188 and 189. Therefore, at the time of defendant's guilty plea, he could not have been prosecuted under a theory of imputed malice or murder under the natural and probable consequences theory.

Defendant was ineligible for resentencing under section 1172.6 as a matter of law. (*People v. Lezama* (2024) 101 Cal.App.5th 583, 590 ["Thus, in the manslaughter plea context, the most reasonable reading of the third criterion for establishing resentencing eligibility is that at the time of conviction—i.e., the time the plea was entered—the only way to a murder conviction was through an imputed malice theory. As a matter of law, this cannot be true for a person, like defendant, who pled guilty to voluntary manslaughter at a time when imputed malice theories had already been statutorily eliminated"].)

We turn now to defendant's contentions.

1. *Whether Defense Counsel Improperly Conceded Defendant's Ineligibility*

At the status conference hearing held on April 22, 2022, the People argued that because defendant admitted he was guilty to manslaughter after the legislative changes to

15

the Penal Code eliminating the natural and probable consequences doctrine, he was ineligible for relief. Defense counsel argued that defendant was scheduled for release in December and that he was hoping to be released early. Defense counsel went on to state that what the prosecutor has stated was accurate.

Defendant argues the trial court erred in "allowing" defense counsel to concede the correctness of the prosecutor's statement and that counsel's concession was tantamount to a complete denial of counsel, under the reasoning of *United States v. Cronic* (1984) 466 U.S. 648, 659.) We disagree.

In order to establish ineffective assistance of counsel, a defendant must establish (1) that his counsel's performance fell below an objective standard of reasonableness, i.e., that counsel's performance did not meet the standard to be expected of a reasonably competent attorney, and (2) that, but for counsel's error, a different result would have been reasonably probable, thus resulting in prejudice. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 694 (*Strickland*); *People v. Ledesma* (1987) 43 Cal.3d 171, 216-218.) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland*, *supra*, at p. 694.) "If the defendant makes an insufficient showing on either one of these components, the ineffective assistance claim fails." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1126 (*Rodrigues*).)

However, "'[c]ompetent counsel is not required to make all conceivable motions or to leave an exhaustive paper trail for the sake of the record. Rather, competent counsel should realistically examine the case, the evidence, and the issues, and pursue those avenues of defense that, to their best and reasonable professional judgment, seem

16

appropriate under the circumstances.'"  (*People v. Montoya* (2007) 149 Cal.App.4th 1139, 1147-1148, citing *People v. Eckstrom* (1974) 43 Cal.App.3d 996, 1002–1003 & *People v. Freeman* (1994) 8 Cal.4th 450, 509.)  This means a defense counsel "is not required to make futile motions or to indulge in idle acts to appear competent."  (*People v. Torrez* (1995) 31 Cal.App.4th 1084, 1091-1092, citing *People v. Turner* (1992) 7 Cal.App.4th 1214, 1219; *In re Lower* (1979) 100 Cal.App.3d 144, 149; *People v. Zikorus* (1983) 150 Cal.App.3d 324, 335.)

In evaluating a claim of ineffectiveness of counsel, a reviewing court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies.  (*Rodrigues*, *supra*, 8 Cal.4th at p. 1126; *Strickland*, *supra*, 466 U.S. at p. 697.)  Thus, in the absence of prejudice, the reviewing court may reject the claim of ineffective assistance of counsel without reaching the issue of deficient performance.  (*Strickland*, at pp. 694, 697; see *In re Fields* (1990) 51 Cal.3d 1063, 1079.)

Here, defendant cannot demonstrate either deficient performance or prejudice because he is ineligible for resentencing under section 1172.6, as a matter of law.  Not only did he admit he was guilty of manslaughter after the operative date of the amendatory legislation, he admitted he was guilty of manslaughter *with malice*, which admission established he could still be convicted of manslaughter under current law.

Because defendant cannot establish prejudice from his counsel's actions at the hearing, his claim of error flowing from the attorney's acceptance of the accuracy of the prosecutor's statement must fail.  Due to the lack of a meritorious substantive challenge

17

to his conviction for manslaughter under section 1172.6, and the rule that counsel is not required to make meritless and futile arguments, defendant has not demonstrated he was deprived of meaningful adversarial testing central to our system of justice.  (See *United States v. Cronic*, *supra*, 466 U.S. at p. 655.)

Defendant has failed to show deficient performance by defense counsel; even if counsel's representation had been ineffective, given defendant's ineligibility as a matter of law, defendant cannot show prejudice.

2.  *Conducting the Hearing Without Defendant's Presence Was Harmless Error*

Defendant argues that by conducting the prima facie analysis in his absence, the trial court violated his right to due process.  We note that throughout the proceedings, the court had ordered that defendant be maintained in local custody and transported to the court for hearings.  However, the hearing date on which the People made the motion to dismiss the petition was scheduled for a status conference, not as a prima facie hearing or even an evidentiary hearing, for which defendant was not present and no explanation was provided.

A defendant has the constitutional right to be personally present in court "where necessary to protect the defendant's opportunity for effective cross-examination, or to allow him to participate at a critical stage and enhance the fairness of the proceeding." (*People v. Flinner* (2020) 10 Cal.5th 686, 710, quoting *People v. Carasi* (2008) 44 Cal.4th 1263, 1299; see *People v. Basler* (2022) 80 Cal.App.5th 46, 57 (*Basler*), quoting text.)  The right is guaranteed by the Sixth and Fourteenth Amendments to the federal Constitution, as well as article 1, section 15 of the California Constitution.  (*People v.*

*Blacksher* (2011) 52 Cal.4th 769, 798-799.)  The state constitutional right to be present is generally coextensive with the federal due process right.  (*Basler*, *supra* at p. 57, citing *People v. Powell* (2018) 6 Cal.5th 136, 147; *Blacksher*, *supra*, at p. 799.)

Critical stages of a defendant's criminal prosecution include the imposition of sentence, a sentence modification hearing, and resentencing.  (*Basler*, *supra*, 80 Cal.App.5th at p. 57, citing *People v. Nieves* (2021) 11 Cal.5th 404, 508; *People v. Guerrero* (2022) 76 Cal.App.5th 329, 335.)  As the court in *Basler* noted, the right to be present applies to resentencing proceedings as well as to the initial sentencing.  (*Basler*, at pp. 57-58.)  In that case, the court held that the defendant had a right to be present for the evidentiary hearing conducted with respect to his resentencing petition, where he had already made out a prima facie entitlement to relief.  (*Id.* at p. 58.)

However, we have found no cases holding a defendant has a constitutional right to be present at the prima facie stage of a resentencing petition hearing where the defendant is represented by counsel, nor do we find a statutory right to be present at that hearing from the language of section 1172.6.  However, "it is well established that a represented defendant has no constitutional or statutory right to be present to address purely legal questions or where his or her 'presence would not contribute to the fairness of the proceeding.'"  (*People v. Fedalizo* (2016) 246 Cal.App.4th 98, 109.)

Nevertheless, assuming it was error to proceed in his absence (where the prosecutor made an unanticipated motion to dismiss the petition), defendant cannot show prejudice under *Chapman*, because he is ineligible for relief as a matter of law.

19

### 3. *Adequacy of the Trial Court's Statement of Reasons*

Defendant argues that where the trial court declines to issue an order to show cause, it was required to "provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).) He argues reversal is required because the trial court failed to do so. We disagree.

The record establishes that the prosecutor argued that defendant's admission of guilt to the amended charge of voluntary manslaughter after the legislative amendments to the statutes, rendered him ineligible for resentencing relief as a matter of law. This was the only basis advanced by the People to support its motion to dismiss, and the trial court adopted that reasoning by stating: "And I think that that's solid grounds then to deny his request." Defense counsel did not object, or request a more specific statement of reasons, but there is no room for confusion over the basis for the trial court's decision.

While the court might have repeated verbatim the prosecution's opposition to the petition as his basis for declining to order an evidentiary hearing, the direct reference by the court to the reasons given by the People established his reasons for denying the petition: defendant's guilty plea admitted he was guilty of manslaughter under current law and rendered him ineligible for relief. Not only did he admit he was guilty of manslaughter under current law, he admitted he did so with malice.

Nevertheless, to the extent the court could have made an explicit statement of reasons for the denial, defendant cannot establish prejudice under any standard. To be sure, the court could have explicitly specified that defendant's guilty plea included an admission that he acted with malice, but we do not see how this would aid the

20

defendant's position.  To reverse for an inadequate statement of reasons where the reasons appear on the face of the record and contained in the record of conviction would be a futile act and the law does not require the doing of a futile act.  (*People v. Herrera* (2010) 49 Cal.4th 613, 622.)

4.  *The Prosecutor's Failure to File a Response to the Petition*

Defendant argues that the court summarily denied his petition without requiring the People to file a response.  We appreciate that section 1172.6, subdivision (c), states that "the prosecutor shall file and serve a response," using mandatory language, but we fail to see how the People's failure to argue in writing why defendant is ineligible for relief warrants a remand for further proceedings where the defendant is ineligible as a matter of law to relief under section 1172.6.

We understand that being served with the People's written response gives a defendant notice of the arguments and evidence he will need to overcome at the hearing on the prima facie showing of the petition.  We also understand the due process implications of being served with the People's response prior to the hearing and we encourage adherence to proper procedure so that counsel may effectively prepare for the hearing.  However, defendant and his counsel had equal access to the record of conviction as well as the record of prior proceedings under the resentencing law.  In fact, we can presume trial counsel was familiar with the defendant's earlier guilty plea by the nature of her agreement that the prosecutor's statement accurately described the nature of the conviction following the change of plea.

21

But to find any error prejudicial as a matter of due process, we must determine that the failure to submit a response to defendant's petition somehow precluded the defendant from persuading the court to reject the People's position and find that he had established a prima facie basis for resentencing relief. This we cannot do. Defendant's conviction following the filing of his first resentencing petition was a matter of record and the trial court was authorized to consider the record of conviction in determining defendant's eligibility. At his first resentencing, defendant enlarged on his admission by informing the victim's family that his "admission of guilt is a personal judgment against myself and does not reflect the mind of any other person involved," and that he stood alone in his guilt.

Defendant has cited no decisional authority in which relief was granted to a defendant in a resentencing proceeding because the People failed to file a response, and we have found none. This may be because, with or without a response, the law requires the trial court to determine whether defendant has made a prima facie showing, so there is no room to find prejudice from the People's failure to file a response in this case.

But there is another problem with defendant's argument: he did not object in the trial court to the People's failure to file a response; he has therefore forfeited the issue. "'No procedural principle is more to this Court than that a constitutional right,' or a right of any other sort, 'may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it.'" (*United States v. Olano* (1993) 507 U.S. 725, 731; *In re Sheena K.* (2007) 40 Cal.4th 875, 880-881, quoting text.)

In any case, we can discern no possible prejudice under any standard that could inure to defendant's benefit by the People's failure to file an opposition. The only remedy would be to remand the case to the trial court so that the People's response could be filed, and the same result would be reached. This is the very definition of harmless error.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

McKINSTER
　　　　　J.

CODRINGTON
　　　　　J.